STATE OF WEST VIRGINIA

**FILED**
**September 23, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **C.C.-1, L.C., T.C., and C.C.-2**

**No. 20-0220** (Kanawha County 19-JA-269, 19-JA-270, 19-JA-271, and 19-JA-272)

## MEMORANDUM DECISION

Petitioner Mother C.C.-3, by counsel Edward L. Bullman, appeals the Circuit Court of Kanawha County's February 6, 2020, order terminating her parental rights to C.C.-1, L.C., T.C., and C.C.-2.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Elizabeth G. Kavitz, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights and denying her post-termination visitation.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The DHHR filed a child abuse and neglect petition against the parents in April of 2019, alleging that they permitted an alleged sex offender to reside in their home with the children. Specifically, the DHHR alleged that one year prior to the filing of the petition, C.C.-1 reported that a family friend sexually abused her. At that time, the child was interviewed at a Child Advocacy Center ("CAC") wherein she disclosed the nature of the abuse. Child Protective Services ("CPS") did not open a case against the parents at that time because the parents were protective of the child and kept the family friend away from her. The DHHR alleged that, since that time, the parents permitted the family friend to be in the home with the children, despite C.C.-1's prior disclosure

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because two of the children and petitioner share the same initials, we will refer to them as C.C.-1, C.C.-2, and C.C.-3, respectively, throughout this memorandum decision.

of abuse. Consequently, the DHHR alleged that the parents failed to protect the children and also failed to provide them with financial support.

At an adjudicatory hearing held in May of 2019, the parents stipulated to the allegations contained in the petition. The circuit court accepted their stipulations, adjudicated them as abusing parents, and ordered that they participate in services. Specifically, the parents were ordered to participate in parenting and adult life skills classes, submit to random drug screens, participate in supervised visits, and submit to psychological and parental fitness evaluations.

Petitioner underwent her psychological evaluation in June of 2019. Petitioner claimed that she did not know how she became involved with CPS. However, petitioner was able to explain that C.C.-1 had previously alleged that a family friend sexually abused her, and that petitioner subsequently allowed the family friend to reenter the home. According to CPS documentation, petitioner "did not believe" that the abuse occurred, and the evaluator opined that petitioner's judgment was so exceedingly poor that she would not exercise appropriate protective behavior or sound judgment in the future. The evaluator concluded that petitioner's prognosis for attaining minimally adequate parenting was poor given her history of pathological attachment, impaired judgment, and failure to protect her children from foreseeable harm. The evaluator recommended that petitioner attend psychotherapy, submit to medication management and random drug screenings, demonstrate the ability to maintain stable relationships and employment, and demonstrate an attachment to her children by complying with CPS intervention and services.

In July of 2019, the guardian filed a report on behalf of the children wherein she recommended termination of the parents' parental rights. The guardian reported that the parents failed to accept responsibility for their actions and believed that they had not done anything wrong with regard to the children, despite their stipulations of abuse and neglect. Despite the guardian's report, the circuit court granted the parents' motions for post-dispositional improvement periods at a hearing held later that month.

At a review hearing held in October of 2019, the circuit court continued the improvement periods and ordered that the parents participate in family therapy. The guardian authored another report following a multidisciplinary team meeting held in December of 2019. According to the guardian, the DHHR reported that the parents were "not complying with the therapeutic conditions of their improvement periods," failed to obtain and maintain employment, had marital issues that were "obstructing therapeutic progress with the children," and were generally not in compliance with the terms of their improvement periods.

The circuit court held a final dispositional hearing in January of 2020. The DHHR presented the testimony of the CPS worker, who recommended termination of petitioner's parental rights due to "[her] inability to progress through [her] improvement period and ongoing fundamental issues impeding [her] ability to safety parent the minor children." The DHHR also presented the testimony of a therapist who provided counseling to the parents. The therapist testified that she was hesitant to integrate C.C.-1 into the counseling because the parents failed to "attain a baseline of safety, communication, and honesty in the counseling environment." On the two occasions the therapist incorporated C.C.-1 into the sessions, petitioner's behaviors did not contribute to an appropriate therapeutic environment. The therapist opined that petitioner had not

made any progress whatsoever since beginning counseling in August of 2019. Lastly, the DHHR presented the testimony of a service provider. The service provider stated that the parents' home environment was "unsafe to bring the children into due to the ongoing destructive conflict between the [r]espondent [p]arents." Following the close of evidence, the circuit court found that petitioner failed to remedy the conditions of abuse and neglect and that her failure to demonstrate the capacity to improve prevented her from being an appropriate parent. Accordingly, the circuit court terminated petitioner's parental rights upon finding that there was no reasonable likelihood that she could correct the conditions of abuse and neglect in the foreseeable future and that termination was in the children's best interests. Petitioner appeals the February 6, 2020, dispositional order terminating her parental rights.[2]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating her parental rights when she had substantially complied with the terms and conditions of her improvement period. Petitioner contends that she reached a "level of functioning sufficient to care for her children." Petitioner states that she participated in services and learned about the habits of predators and grooming behavior, thus remedying the conditions of abuse that led to the filing of the petition. Petitioner claims that marital and financial issues should not have been a basis for terminating her parental rights as they created no danger to the children. We disagree.

We have previously held that

> [a]t the conclusion of the improvement period, the court shall review the performance of the parents in attempting to attain the goals of the improvement period and shall, in the court's discretion, determine whether the conditions of the

---

[2]The father's parental rights were also terminated below. The permanency plan for L.C.-1, T.C., and C.C.-2 is adoption by their respective foster families. C.C.-1 is currently receiving inpatient treatment and the guardian states she remains hopeful C.C.-1 can be placed in a foster home pending her successful treatment.

3

improvement period have been satisfied and whether sufficient improvement has been made in the context of all the circumstances of the case to justify the return of the child.

Syl. Pt. 6, *In re Carlita B.*, 185 W. Va. 613, 408 S.E.2d 365 (1991). We first note that, contrary to petitioner's contention, she did not substantially comply with the terms and conditions of her improvement period. The petition was filed against petitioner due to her failure to protect her children from a family friend who had previously sexually abused C.C.-1. Petitioner's claims that no additional inappropriate touching occurred ignores that fact that the danger was present and highlights her continued impaired judgment. Indeed, petitioner's psychological evaluation report indicated that her judgment was "exceedingly poor" and that she would not exercise appropriate protective behavior or sound judgment in the future. Petitioner's statements during the proceedings that she did not believe the sexual abuse occurred belie her claims that she remedied the conditions of abuse that led to the filing of the petition. While petitioner argues that her marital issues should not have been a factor in the decision to terminate her parental rights as they did not present a danger to the children, she ignores the purpose of the family counseling sessions. C.C.-1 experienced a traumatic situation, and rather than attempting to help create a therapeutic environment for the child, petitioner ignored counseling protocols and used the opportunity to fight with her spouse. As such, it was petitioner's inability to attain a safe environment for her children, and not simply her marital issues, that led to the termination of her parental rights. Moreover, we find no merit in petitioner's claim that her financial situation contributed to the decision to terminate her parental rights as the circuit court made no findings regarding the same in reaching its decision to terminate. Based on this evidence, it is clear that petitioner did not substantially comply with the terms of her improvement period and failed to remedy the conditions of abuse.

The above-mentioned evidence also supports the circuit court's termination of petitioner's parental rights. West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(d)(3) provides that a circuit court may find that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when

> [t]he abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child[.]

The record establishes that petitioner failed to follow through with rehabilitative efforts designed to prevent the abuse or neglect of the children. As noted above, petitioner failed to adequately participate in counseling services. Testimony established that petitioner simply used the sessions as an opportunity to fight with her husband over marital issues rather than work on improving their parenting skills or addressing her impaired judgment. Petitioner was unable to create a safe environment for the children or contribute to C.C.-1's therapy. Further, petitioner's psychological evaluation report indicated that her judgment was impaired and that her prognosis

4

for attaining minimally adequate parenting was poor. This conclusion was supported by the fact that petitioner failed to accept responsibility for her actions, stating, during her psychological evaluation, that she did not know why she was involved with CPS. In fact, petitioner minimized the abuse to C.C.-1 and claimed that she did not believe that it occurred.

While petitioner claims that she should have been granted a less-restrictive disposition to the termination of her parental rights, we have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Based on the foregoing, we find no error in the circuit court's termination of petitioner's parental rights as there was sufficient evidence to find that there was no reasonable likelihood that she could correct the conditions of abuse and/or neglect in the near future and that termination of her parental rights was in the children's best interests.

Petitioner also argues that the circuit court erred in denying her post-termination visitation with the children. Petitioner claims that she had an "established relationship" with her children and that they "knew their parents." Moreover, she claims that she "never abused her children." We find petitioner's argument to be without merit.

We have previously held that

> "[w]hen parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D.*, 211 W. Va. 79, 562 S.E.2d 147 (2002). Petitioner fails to establish that continued contact would be in the children's best interest. Petitioner's claim that the children "knew her" does not rise to the level of demonstrating a bond and she cites to no portion of the record demonstrating that, in fact, such a bond exists. Further, petitioner continues to deny any wrongdoing, stating that she never abused her children despite her stipulation at adjudication below. As such, petitioner remains incapable of creating a safe space for the children and any

visitation would not be in their best interests. Accordingly, we find no error in the circuit court's decision to deny petitioner post-termination visitation with the children.

Lastly, because C.C.-1 has not yet achieved permanency, this Court reminds the circuit court of its duty to establish permanency for the child. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for children within twelve months of the date of the dispositional order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedure[] for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under [West Virginia Code § 49-4-604(c)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home [cannot] be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its February 6, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: September 23, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison